Good afternoon, Illinois public court first district court is now in session, the Sixth Division, the Honorable Justice Mary l mc for presiding case number 21 dash 1353 Robert Glover versus city of Chicago. Thank you, Darren. Welcome Council. Before we begin, I would like Council for both the appellant will be Kelly who have been argued today to give us your name, and Council for the appellant if you can tell us if you want to reserve any of your 20 minutes for about. Thank you, Your Honor, I'm Elizabeth Bartolucci I'm representing the plaintiff appellant Robert Glover and I would like to reserve five minutes for rebuttal. Okay. And I'm Julian Henricus, and I'll be representing the city of Chicago and police officers to pay a cheat and McLean Hall. All right. Whenever you're ready. Please the court Council. The question the court is being asked to answer here is whether defendants have met their burden in establishing as a matter of law that they were not executing or enforcing the law is contemplated under section two dash to have to have the tort during the events that led to plaintiff shooting, whether section for one or two or for one or seven could apply at all is almost immaterial. At this procedural stage, it is the defendant's burden to show that section two dash to have to does not apply. Maintains they have not have not sustained the burden of proving that they were not executing or enforcing the law during the events that led to plaintiff shooting. Specifically, defendants submitted no evidence in support of their 2619 motion to dismiss regarding what they believe they were doing at the scene of the shooting, but the allegations of the complaint, which is the only truly relevant document here since we are at the pleading stage clearly established that the defendants were responding to the call of a crime multiple crimes in fact in progress. The shooter had threatened to kill the plaintiff had threatened to conduct a mass shooting in the bar. He had stated that he had a gun, and the police were responding to that. This was not community caretaking this was not the general provision of police protection services, this was an active and you on, it looks like you have I just want to be clear he's withdrawing the allegation, based on the defendant's failure to make an arrest. Yes, we did formally withdraw that allegation, Your Honor. As the court might observe the tort immunity act is somewhat of a minefield. And unfortunately, certain words can trigger certain immunities but what should rule at the end of the day are the core facts of a case, and here are the core facts of the case are that Mr Glover, having had a confrontation and been threatened by Mr Glover chose to remain inside the bar, the bar owner agreed with that and that Mr. Excuse me sent Mr Grayson the shooter out of the bar. In that scenario, Mr Glover was perfectly safe, and he was waiting to see what would occur, presumably, hoping Grayson would leave the scene. In any event, however, hooray the police are here the police arrived, and in their attempts to break up the situation entirely. To the extent they might have believed Mr Glover was also somewhat a protagonist. They talked to Grayson for approximately 10 minutes, and he was insisting that lover come out and apologize to him. So, that suggests he was still in a highly animated state, regardless of that, and regardless of having been told that Grayson had a gun and Grayson admitting to the police that he had threatened to kill plaintiff, the police then instructed plaintiff to come out of the bar to come out his place of safety and confront Grayson once again, and predictably, the two. Then began another altercation, at which point the police instructed my client Mr Glover to go to his car and Mr Grayson to leave the scene and within 39 seconds, my client had been shot multiple times. So in this case, it's almost impossible to see how this was not the execution or enforcement of the law, who is supposed to how does this ultimately get sorted out because an argument can be certainly be made and I'm sure you're supposed to make it that protective services they were trying to avoid confrontation they can try to break it up and try to protect people. How does it ultimately get decided, which it was. Well, Your Honor. If we look at the case law, and obviously that would be very appropriate for the court to do to look at precedent construing section two dash 202 and look at the case law where courts have evaluated where officers were executing or enforcing the law and there are patterns that are extremely similar to this one response. Yes, is it a jury question is a question. Who's going to how does that ultimately get made doesn't get made by a jury, as soon as you get that summary judgment gets made by a jury based on instructions is that is that what happens in your view. Yes, Your Honor, we believe that could happen unless let's say the defendants are deposed, and they admit that they were executing or enforcing the law plaintiff would probably be entitled to summary judgment then, but if we don't get to a summary judgment disposition yes I believe a jury could be asked to. I hear a question, police are either executing and enforcing the law, where they're providing protective services they're never doing both. Well, Your Honor, I think they could be doing both but that's where we get to the procedural status here and the defense burden of persuasion, we're looking at first of all this is a complaint, alleging willful and wise and conduct in response to the complaint, the defendants have asserted affirmative defenses. So out of the gate, it is their burden of persuasion on their affirmative defenses. In response to those affirmative defenses you know they invoke the Tort Immunity Act, and say we are immune under the Tort Immunity Act, specifically these two provisions plaintiffs response to their affirmative defenses wait you are not immune under the Tort Immunity Act. So we have a situation where there are two possibilities of which of the two for immunity provisions apply, and the case law seems to say that the more the one that's more specifically applicable would apply. So the question is, who's going to make that decision. Ultimately, would that decision, should that decision be made by the trial court or by the trial of fact, I believe that that court is one, excuse me that determination is one that's appropriate for the court. It could ultimately be a jury question but here, the defendants are asking the court to resolve it as a matter of law. So they are, if it is a potential jury question defendants are trying to take it away from a jury. I believe that the court could appropriately make that decision as the court has done in multiple prior cases. So, because there's been no discovery you don't even believe you don't believe that decision can be made yet, that's your position is that correct. Well, I believe it could be made for purposes of a 2619 motion to dismiss. I do believe and that's where I was leading with my discussion that it's the defendants burden of persuasion on their affirmative defense but it's also their burden of persuasion under 2619 under 2619 the complaint, and all allegations or evidence that was submitted, which there was none in the proceedings below it's the complaint alone, have to be construed in light most favorable to the non moving party. So, if there's a determination that has to be made now which there is the court is to construe the complaint in the light most favorable to the plaintiff. So, in doing so, it could say, it must say the 202 is the section that applies. And thirdly, the Tort Immunity Act itself case law instructs us must be strictly and narrowly construed that statutory scheme was enacted and derogation of the common law, and it courts unanimously say it's to be narrowly and strictly construed against the finding of immunity. So yes it's this juncture on a 2619 motion to dismiss it is absolutely within the province of the court to decide whether plaintiffs have a set or excuse me defendants have established as a matter of law that their affirmative defense prevails, and when the day, which they just cannot do they haven't established that they weren't enforcing or executing the law, ie they haven't established that they're immune from liability which is their affirmative defense. They have suggested that two other statutes potentially apply, but there's still 202 they can't just ignore 202 and getting to the heart of what the parties discussed is the court has to decide which section is most specifically applicable. So, I think the facts here, bear out that it is justice make fun intimated couldn't both be happening. Yes, both could be happening there could be police protection services being given and please could be executing or enforcing the law, but here, when you display here we have police officers actively responding to a call of threatened gun violence that is executing or enforcing the law, the fact that nobody said there, you're, you know, enforcing section 25 dash seven of the municipal code is not what's necessary that's not required at the pleading stage, but under the facts, this is not general police protective services, this is a response and as the case law bears out I mean we have at least seven cases where police responding to radio reports of crimes in progress responding to a call of shots fired, even escorting a witness to a show of identification was considered executing or enforcing the law. It just doesn't seem possible to reconcile the facts here with those cases, and not find the 202 is applicable and more the elements of negligence or willful and wanton conduct have been fled. But here our contention is the circuit court denied all of the defendants to 615 motions to dismiss in which the duty issue was addressed defendants have not appealed from any of those to 615 denial. And as we've argued they were required to do so, and they have. I'm sorry, so they got everything they wanted they got the case dismissed, why would they file a lawsuit. Because your honor, as I've indicated in our briefs to six, and as the court certainly knows to 615 and 2619 or two separate statutes, they have completely separate grounds and standards of decision, and the fact that parties are allowed to file combined section 615 and 619 motions to dismiss doesn't make them the same thing. And, you know, I'm sure you've seen it various junctures in a case that 2615 was denied, but then a 2619 was granted, they're still very independent motion. And if the party to be encouraging parties who've gotten a case dismissed defendants and got a case dismissed to then appeal to us because they don't like the grounds. Not appeal but cross appeal, if they want to raise their 2615 they're rejected to 615 argument. Yes, because I mean there's case law that says that if the. At what case are you relying on. I'll pull that up for you, Your Honor. Please, that's the one you cite. I'm sorry, which plays yeah versus village. That's the most point. And even the cases discussed by the defendants, such as material services corp. indicate that if an underlying judgment is adverse in any respect, not just an adverse finding that's where there's a distinction here sometimes in these cases there has been an adverse finding to a party, but here we have an adverse judgment, the judgment that's what the judgment. Why would they appeal on one ground, they don't have to appeal but they have to cross appeal, if they want to address their 615 argument. I think, I think that I mean that's what the case law says the case law addresses claims by putting aside the forfeiture argument why don't you address the merits of the duty issue. All right, Your Honor, so the duty here begins with the common law duty that every individual owes to another, not to create a risk of harm to them, and to protect against a foreseeable risk of harm. As we mentioned, the facts are also support the finding of a special relationship between the plaintiff and defendants, in that the defendants voluntarily undertook to protect or intervene in the situation will call it. They is our position that this falls within the duty obligation imposed under the restatement section 314 a four, which provides the person who takes custody of another so as to deprive that person of their normal avenues of protection as a duty to protect that person against unreasonable risk that of harm. Here, there was already a risk of harm to the plaintiff, due to Grayson's presence, however, the police exacerbated and increase that risk of harm by making him come out of his place of safety, his place of safety was his other avenue of protection and the police deprived him of that the coercive or compelling effect of a police instruction directing you to come out of somewhere, and then to go to your car is very strong and it amounts to custody for purposes of this custodian custodian duty under the restatement. So there was a duty not to create a risk of foreseeable harm or increase the risk of foreseeable harm, and then not to exacerbate the situation. And the defendants here did all of that, Mr. Glover was in the bar safely, thanks to himself and the borrowers protections and it was the police who made him come out again, confront and incite the shooter, and then walk to his car unprotected and get shot. So you're basically in the trial court got it right. I'm choosing 25. Yeah. I do believe the judge got it right on a 2615 aspect and due to the forfeiture issue I don't think that's an issue but I don't think the court needs to concern itself a duty because I think it's very clearly there under either the common law duty, or the restatement duty, and the special relationship under 3148 for custodian protecting. So there being the duty. The question next would be breach, and that obviously is typically a jury question and we're nowhere near there because we're still at the pleading stage, but I believe the plan has pledged sufficient fact to establish and the circuit court agreed the existence of a legal duty. So the next question will be breach and proximate cause and damages, and those should be allowed to proceed to a jury defendants are trying to stop the entire case short at this phase by saying no, we're a failure to do something, every one of them is a failure to do something by the police here, we're not necessarily alleging failures, although we believe that occur but we're alleging active increase of the risk of harm to the plaintiff. And if you look at the even though it's not the case which defendant site that case, examine whether for one or two contains an express contains an exception for active, active steps taken by police. So in viewing reviewing the language of the statute itself, the court in the parties couldn't even tell if it covered active participation by the police or only address negligent failures by police and because that is the wording of 412 every single statement in there addresses a failure, a failure to provide adequate police protection failure to prevent crime, and the failure to identify or apprehend criminals here. Those are all failures, but we contend with the plant with the defendants were doing was executing or enforcing the law which is active and which seems directly addressed by to this to to, they were executing or enforcing the law when they arrived at that scene, they were doing their job responding to a radio call of a gun threat, they were there within three minutes. There were multiple lives that Grayson had. So, just do you have a quick question does anybody else have any more questions. Okay, so if you just want to make a conclusion, then you can come back. I think I'm fine. I, I'll just rest there. Okay, thank you. Yes, may it please the court. In our brief. Well, Glover argues at length, and his reply brief that this court lacks jurisdiction to consider our contention concerning the duty ground, because we didn't file a cross appeal, but Glover is wrong. We didn't need to file a cross appeal for this court to have jurisdiction to consider the duty ground as an alternative ground for affirmance of the judgment. And this is made clear by the Illinois Supreme Court's decision in the material service case which we cited in our brief point of confusion is, is not to adhere to what a, a, a judgment is the judgment in this case was solely the dismissal of the case. It had nothing to do with the grounds, the findings. The any anything else about whether 2615 was the reason or whether 2619 was the reason the soul. The judgment that consisted exclusively of the dismissal of the case. We, we, this court has jurisdiction to consider our argument that for, for, for affirmance of the judgment on the alternative ground of duty. Okay, but, but let me ask you this. Assuming you're right. Why'd you start with. Why did what, why did I start there why did you start with to 615, we lost that one since 619. Well, in light of the case law that we cite in our brief that says that the natural progression of the logic of these cases is duty. So we started there with with duty. I think our duty argument is no stronger or weaker than the art than our argument concerning the Ford immunity act as, as I'll explain as I go through the discussion of both. But since we did argue duty first in our brief. I'll address that first. And, and then I'll proceed to the immunity ground. Now, in his reply brief lover makes two arguments concerning duty. But neither of his arguments contends that he alleged the particular duty that the circuit court suespanti concluded that the officers owed him I remember the circuit court made up this duty that has nothing to do with either a special duty or a duty of a from section 2202 of the tort immunity act, excuse me. Yeah, section 2202 of the tort immunity act, which is an immunity provision, and yet, section one dash 101.1 of the tort immunity act says that the act doesn't doesn't create duties and only creates immunities and defenses. So, that was wrong off the bat to concoct a new duty, based on an immunity provision of the tort immunity act in the face of the language of section one dash 101.1 of the tort immunity act. In any event, now Glover's arguments are both of Glover's arguments that he presents in his reply brief for new. He made neither of them in the circuit court and he therefore waived he thereby waived or forfeited both of them. In any event, both of his new argue arguments are wrong on the merits. On the 615, if we were to rule against you we'd be affirming so we can affirm on any ground we want, right, we can decide on any basis we want. That's correct. One of the new arguments that Glover makes in his reply brief is that the amended complaint alleges that he and the officers that were in one of the special relationships that under the common law would be necessary to establish that they owed a special relationship is defined by section 3113 14 a four of the restatement second second of torts, as someone quote, taking the custody of another, so as to deprive that person of his normal avenues for protection. The allegations of Glover's admitted complaint do not satisfy those requirements, specifically the allegations do not indicate that the officers took custody of Glover, he was not arrested, he was not in custody, nor did they indicate that the officers were in the bar until after Grayson departed the scene. But I think they're arguing that the officers created this situation and created a duty. When they called him out and brought him into harm's way that he was safely in the bar. They were dealing with Mr Grayson and Mr Grayson convinced them that they shouldn't be talking to him but then instead they should be talking to Glover, and then they eventually called Glover out. So again, the argument that councils making and whether that argument was made in the complaint is something different, because they were given an opportunity to follow them into complaint the case was dismissed with prejudice. So if they were to go back maybe they would follow them into complaint maybe they'd make it clear that what was going on here is that the officers created that do and placed him into harm's way. Do you want to respond to that that's just their argument. I haven't taken a position. Yes, well, there's a lot there the first thing is that it's still the duty is still a duty. A special duty to protect someone from harm, whether the officers created it or not, it's still a duty to protect someone from harm doesn't have anything to do with whether it's created or not, the, the officers had a special duty to protect them from harm. And, and that duty requires that he'd be in a special relationship with one of the four types of special, but not if not if they've created the situation it doesn't require a special relationship, or we all have a duty to avoid unreasonable harm. So if they created this dangerous condition or dangerous situation, if you will. And now they didn't didn't protect him after creating the situation taking them from his place of safety. Again, this is their argument, and they're arguing that they're in where this do that that's where the duty lies. And now we get to the next issue after we determine whether or not there's a duty. But their argument, they certainly argue that. But out on the street. When, when everyone is there the two officers, both men are there. The, the There's nothing in the allegations of the complaint that would have indicated that Glover couldn't have said to the officers. Okay, I'll leave, I'm happy to leave, but let's just let let's just let Grayson walk far enough away from me that I'm not going to be in danger for there's no indication in the in the complaint that that couldn't have happened. There's nothing, no suggestion that the officers wouldn't have honored that request it's a perfectly simple and easy request to honor. No reason to believe the officers, you know, send him to be. Don't we at this point have to construe this complaint. Any toss it very favorably complaint. Is there a possible, you know, that that could be that there was certainly nothing inconsistent with that possibility, it was alleged that the officers directed him to go to the car. What he responds and how much you push back we don't know any of that. Yeah, the, the. It's, it's almost impossible, I think, to imagine that the officers cared to require him to leave first and would have would have said you go first. And, and, and without constraining Glover Grayson, there's absolutely one can imagine anything. But there's, it's, it's simply hard to they pled this and certainly if they would have pled. If they would have pled that the officers, you know, would not have allowed him to leave to go to his car would be a different story, but the based on the allegations of this complaint a reasonable construction of this complaint is that, that it would not be reasonable to assume that the officers would have required him to go to his car before Grayson left the scenes for that reason. The, he, the officers were subject to the special duty. Grace Glover was safe at that moment. Mr. Enriquez let me stop you because it seems to me that, you know, you're compartmentalizing this case. As I understand the allegation and there's really two salient allegations. The police officers were notified that Mr. I forget the other fellows name not clever but the Grayson Grayson Mr Grayson that threatened to shoot. Mr Glover inside the bar. Fortunately, the bar owner or manager was able to convince Mr Grayson to exit. Police officers right on the scene. And then the police officers directed Mr. Glover to come out a reasonable inference may be drawn that the police officers placed Mr Glover in the cauldron. When moments before he was in the safety of the bar. And so why doesn't that give rise to not only a duty, but a question of fact about whether they acted willfully and wantonly in the execution and enforcement of law. Well, first of all the allegations of the complaint say the officers requested Glover to leave the bar. They didn't direct him to leave the bar, they were close so but so let me stop you there. You know, a reasonable person faced with a request by a police officer may not understand that it's optional. And, you know, reasonable fact finder can make that determination. Would you agree. But either way. Some people might or some people might not, but the Glover is the master of this complaint. He alleged that the officers requested, he understood that it was a request. There was no there was no suggestion in the complaint that Glover would have refused wanted to refuse and reluctantly came out. There's a complaint alleged that Mr Glover understood this request to be, you know, optional that he could refuse to comply and does that this complaint actually alleged that. No, it doesn't allege that he considered it optional or not, but it doesn't say that he considered it his obligation to come out and just he just said the cut the officers requested him to leave and at their request he left. Once they're on the street in any event. Once they're on the street, even if the officers had said please come out here or come out here we order you to come out here and they're out on the street. At that point, the two men make gestures to each other and have crosswords again with each other. And the officers end up hoping to solve the problem by sending both men on their way. The, the, there's no indication at all in this situation it's hard to imagine police officers who who wouldn't have honored a request by Glover, he said, he said, Look, you're separating us, let, let's let Glover go far enough away that I can go to my car. He didn't do that. And we don't know that because there's been no discovery. Well, certainly the what they with the detail that's alleged in the complaint one wouldn't leave that out if that had been any any suggestion. He's the master of his complaint if he wanted to say, I felt obligated to leave, even though glove. Grayson was still waiting here. Still here and could have followed me away. If he wanted to say that he certainly would have said that in his complaint. I think probably what happened is he thought that if he went to his car and left the police officers would have prevented Glover from crossing the street and following him he didn't know what happened after after he walked away. And, and so the officers then do make a mistake. And don't hold Glover there Glover then goes across the street, but there's no suggestion that that that Mr Glover felt compelled to go at that moment, without the at least the assumption that the officers are going are going to prohibit Grayson from leaving. So you only have about five minutes left so unless there's other questions I'd like you to address the community. Okay. All right with the panel. I'll do, I'll do that and it looks like we've gone into I want, I would have gone into detail with the allegations of the complaint step by step by step. And the, the, but the, the salient aspect of this is that again Glover was the master of his complaint, and in it he said that based on its allegations concerning the shooting incident. The officers quote failed to protect him from being shot by Jeremy Grayson. Those are the words Glover used and his own amended complaint to characterize this claim. And that characterization by Glover is the most salient aspect of this case, but because it captures the gravamen of the incident, precisely, and significantly. It also matches almost identically the language of section 4102 of the Tort Immunity Act, which confers absolute immunity from liability for the quote failure to provide police protection or adequate police protection Glover. So, so that matches, almost, almost exactly the language of his own admitted amended complaint characterizing the, the incident to the shooting incident lover relies instead on a different provision of the section 2202, which immunizes only ordinary negligence not willful and wanton conduct, but the language of section 2202 is not nearly as close to Glover's own amended complaints characterization of his claim as, as the language of 4102 is, but we're allowed are we not not just to look at his characterization but his factual allegations, and the scenario as a whole and whether this scenario as a whole could be used as execution. Last. That's certainly so but there's no indication at all that his characterization, which captures precisely the step by step description his step by step allegations is description of the incident. There's no indication at all that when he said they that what happened in this case is the officers failed to protect me. That's what anybody would look at and say, or almost anybody would look at and say, that's what happened in this case. And guess what, that is the language of 4102. It's not the, it's not the specific language of 2202. Now it's true that that the officers may have been thinking that they were also executing or enforcing the law at the same time. But, you know, the case law is that if there's more than one provision of the act that might apply the most specific specific immunity provision applies, and there's any. Why is for one or two, any more specific than the execution enforcement qualified immunity for me why it's they're both very broad, as opposed to 107 which is very specific but both. Both of those provisions are very broad. Well, the, the, the execution of the enforcement of the law can involve many different things, one of which is the Pope providing police protection. The police protection is much more specific in a situation, then, then to to go to an all in most situations. And this is one of those situations, section to to can be more specific in certain situations, but not in a situation like this, where the is what's at issue. That's that that one might call that executing or enforcing the law or a situation involving executing enforcing the law, but it, but clearly the act of protecting someone from injury from from being shot by someone else who's threatened to shoot someone is the epitome of the protection, our enforcement of the law. And it certainly Mr Enriquez doesn't matter what the police officers think they were there for. In other words, if they were to be deposed and they were to be asked, Well, what were you doing there. You know what what what was your role there, does it matter what they say. I don't think so. I don't think it matters at all. I think that what matters is what plaintiff thought that the officer, what the author should have been. They, the officers might not have thought that they needed to to execute or enforce, excuse me to protect it. But the but that's what for one or two is about it's the failure to protect. Officers probably wouldn't say they failed to protect if they thought that they were there to protect. And yet, that that would be true almost all the time, almost every officer would say, Well, I didn't fail to protect I didn't think I was there to protect. And yet from the plaintiff standpoint, his situation, his, his interest is, I wanted to be protected and the officers failed to do that. That's why he alleged the complaint this way. He alleged it because Mr. Lucas. I'm not sure that you meant to answer justice Taylor's question that it was, it was strictly what Mr. Glover thought that matters here. I think it's, it really boils down to what was really going on, not what Mr Glover thought, but I have a different question for you. My question is, you argue and I want you to respond to this only because I'm going to ask Mr. Mr to the same question. You argue that even if they were at the time enforcing the law that by the time they sent everyone in their different or the two individuals in their different direction. They were no longer for enforcing the law so at the time of the incident they were not enforcing the law. Do you want to explain that to us a little bit as to how you get there. Well the Albert case actually goes through this, and specifically says that an officer at one point can be enforcing the law, and can then stop enforcing the law. Once the officers on the street sent them on their way and they both departed the officers had no way to do anything else at that point, they weren't, they couldn't have been enforcing the law, they did kick in again and enforce the law as soon as, as Glover puts it about 39 seconds in which they were not enforcing the law, and then all the other time they were enforcing the law. That's how we would interpret your last statement. Well, whether they're not they were enforcing the law or not. For before those 39 seconds certainly during those 39 seconds they were no longer because the two men were no longer with them. They had no way of doing anything. They couldn't do anything at all, had had another crime been committed at that point, they could have pursued, whoever made whoever committed the crime and indeed Grayson committed the crime by shooting Glover and they pursued it. There was no question but at least that moment now that's the, that's a very micro way of looking at the circumstance that the Albert case thought would be an important aspect of the case. It doesn't seem very important to me in this case because whether or not the officers might have somehow one might try to concoct a theory about why the officers were still enforcing and executing or enforcing the law, even during those 3039 seconds perhaps one could think of something I can't think of, but even if that were so they clearly were not protecting him. And that's the failure to protect. They were not protecting them, they were away from them, and they failed to do what was necessary to protect it. That's the paradigm of this case, but that's also the crux of this issue here is, is whether or not to to to applies or whether or not, or one or two applies to this, which one is applicable to this situation that's what needs to be resolved, and that's, so you're, you're saying that it's clear. Well, and of course Miss body routine is arguing that it's not so clear. In fact, she believes that it's clear that to apply. Well, as you pointed out, the real. One of the, one of the questions in this case is suppose both provisions apply, right, which is the more specific. It can hardly be doubted that if to to applies for one or two certainly does so that if to to applies for one or two is the more specific one, as we talked about a minute ago. It is the paradigm. He alleges it in his complaint, those are his own words that the failure to protect was what he was interested in when he brought this lawsuit. He was suing, because the officers had what he called a special duty to protect him from from from Grayson, that's how he alleges his own words, the master of the of the amended complaint alleged it just that way. The. As far as this question about whether there was any evidence in this case we cite in our brief the case law, indicating that in a in a 2619 situation like this. The, the allegations of the amended complaint can be the affirmative matter that defeats the claim. And in this case, the complaint itself is, is what defeats the claim. Try as they may try as they may they can't get around it. Now the Tort Immunity Act was created. Because we're not going to go there you're out of time. So unless there are other questions. Your time. Is there a last point you want to make without giving us the history of the program. No, I think the, for the reasons that we've expressed the the judgment in favor of the city and the officers should be affirmed. Thank you. Thank you. Council made a statement, and answering your questions that I think really sums it up perfectly he said, if section two dash to apply, then certainly for one or two applies. That means 202 is a subset of for one or two, and that is our position, providing police protection services is a very broad generic description of something a public entity and its employees can do. You can provide police protection services in a number of ways, including such things as directing traffic for a parade. That's not executing or enforcing the law here, executing or enforcing the law is a sub set a sub activity within a local public entities provision of public protection services. That pretty much answers the question that you're trying to answer but to go on, I just want to note that council continues to focus on the protection issue the protection issue but Mr Glover's complaint does specifically allege the police affirmatively cause not requested cause plaintiff to exit the bar placing him at a risk of being shot and killed. This court has a long line of precedent this obviously is not a Fourth Amendment seizure custody issue. It's a civil setting and so the restatement definition and interpretation of what custody is would apply, but you have a long line of case law that In some cases, in some cases it hasn't I guess it depended on different facts but there's a long line of Fourth Amendment case law that says, any request by the police in circumstances like this would have been interpreted as an instruction, a direction that plaintiff could not have chosen not to follow, and he was under their custody in coming out of the bar and getting to his car. And as the case law we've cited suggest contrary to defense counsel's analysis course aren't supposed to parse through by seconds here in this case by 39 seconds when the police might be enforcing or not enforcing the law one of the cases we cited about police driving the car forward to disperse a crowd, and then putting it in reverse to escape the attack. Mr. Enriquez cites the Albert case in the Albert case supports his position that even if the officers are enforcing the law. At some point that activity is, and they're no longer enforcing the law. And once they've, they've gotten the two individuals to walk in different directions that at that point, they were done with what they needed to do and they could have left, so that they were no longer enforcing the law when incident occurred, that's his argument I would say that they directed plaintiff to walk to his car, and I have evidence could bear out that they expected him to fully cross the street, get into his car and leave. So I don't believe they stopped enforcing the law I don't believe that if he had been the one who turned and ran toward Grayson, there would have been a break in that chain of events. They expected him to follow their direction to go to his car, and until he got in his car and left, they were there enforcing the law, certainly in 39 seconds, they were there enforcing the law, making sure both men, follow their direction. Either man could have turned back and attacked each other within seconds. And that's exactly what happened. Well, the issue here because if they were not enforcing the law that at the time, then two or two doesn't come into play. Because it's the only way to to comes into play. Well, I think that's an extremely weak analysis. There's case law where the police were, as I mentioned, that that's Mr. No, I agree I agree that's their argument but I think that's not the analysis the court with courts apply courts have found enforcement or execution of the law when a police car moved forward to disperse the crowd, then became attacked by the crowd and went in reverse to retreat to escape attack, and that was still considered executing reinforcing the law there the police officer was protecting himself. He wasn't protecting the crowd or anyone else. This is your position that when the officers directed Mr Glover to exit the bar. And when they subsequently directed Mr Glover, and Mr Grayson to go to their respective vehicles that they were enforcing the law. Yes. Okay, because one of the laws we cited is public nuisance, and I provided a very long definition of one of the municipal codes that could be an issue that they could have been enforcing, because potentially the police were viewing Glover as part of the problem. I believe both men were part of the problem. And there are several laws that they could have been enforcing and breaking them apart. So, but more specifically, let's put aside, you know, the municipal code sections or any statute. Does it constitute enforcing does the mere direction by a police officer to a civilian to do something or stop doing something. Does that constitute enforcing the law. I believe so your honor because it could have been deemed the police officers could testify, we were investigating a report, we were investigating what happened, a crime, a crime had been reported what Glover or Grayson had done already constituted a crime. So it could have been an investigation of a crime. So that's enforcement of the law, I believe investigating crime would be deemed enforcement of the law if, as in the cases we cited if driving a witness to a, an identification process is executing or enforcing the laws and certainly arriving at a scene and And here, it was not Mr. Glover, who called the police, and it was not Mr Glover who requested police assistance. He remained in the bar. So, though, some of his allegations address protection, they just protection in the context of the defendants having created the foreseeable risk of harm to him. He didn't call them he didn't ask for their help. He was in the bar safe. So, though he mentions the word protection in his complaint he also says they affirmatively caused him to leave the bar and put him at risk of being shot and killed. That is the crux of the case. He didn't ask for their protection, the bar owner asked for assistance to either break up a public disturbance prevent mass shooting or prevent Mr Glover from being shot. And that's what's at issue. It's not protection in the extremely generic sense that for one or two contemplate all the cases that can shoot for one or two are much broader basic protection services. They're not actually responding to the scene of a crime, majority of cases that address going to stop you as you're out of time. All right. Any questions from panel. Well, very much. We'll take this case for advisement.